FRANCES V. BRIGGS *vs.* PROBATE COURT OF WESTERLY.

WASHINGTON—JUNE 21, 1901.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1)   *Probate Law and Practice.   Revoking decree.*

The action of a Court of Probate in entering decree revoking letters testamentary theretofore granted, without petition seeking such revocation or notice to executrix, is void, although all parties in interest were represented by counsel at such proceedings.

(2)   *Probate Law and Practice.   Executors.   Right to appointment after renunciation.*

Of two joint executors, A. qualified and B. claimed an appeal from the probate of the will and contested the same.   The Court of Probate entered decree setting forth that B. had constructively declined the trust and issued letters testamentary to A.   The will was sustained.   Subsequently B. petitioned that letters might be issued to her, and the court entered decree revoking the former decree whereby letters were issued to A. and issued letters to A. and B.:—

*Held*, that the action of the court in granting letters to A. was proper; for, as it was competent to grant letters notwithstanding the appeal, it was proper in view of the action of B., to direct that they be issued to A.

*Held*, further, that the action of B. amounted to a renunciation of her right to act as executor.

*Held*, further, that the action of the court in revoking its first decree and entering the decree granting letters to A. and B. was void, as by admitting the will to probate and appointing the persons named therein as executors and subsequently issuing letters to A. it had exhausted its authority in the premises.

Distinguishing *Perry* v. *De Wolf*, 2 R. I. 103.

APPEAL from decree of Court of Probate.   The facts are stated at length in opinion.   Decree quashed.

TILLINGHAST, J.   The material facts in this case are as follows : On January 8, 1900, the Court of Probate of Westerly, after due notice, and no person appearing to object thereto, admitted to probate a certain instrument in writing purporting to be the last will and testament of Peleg Clarke, late of Westerly, deceased, and ordered that letters testamentary be granted to Frances V. Briggs, who was the daughter, and Phebe M. Clarke, who was the widow, of the testator, they being the persons named as executors in said will.   Said Frances V. Briggs immediately filed her written acceptance of the office of executor, but said Phebe M. Clarke did not accept of said office, but on January 19, 1900, filed a notice in writing that she was aggrieved by said decree and claimed an appeal therefrom to the Supreme Court, and also claimed a jury trial in the case.   On the same day she filed a paper in the office of said Probate Court, to the effect that she should claim the right to act as executor of said will if, on appeal, it should be sustained as a valid will.

February 19, 1900 (after the expiration of thirty days), said Court of Probate entered its decree as follows :

" Be it remembered that whereas Phebe M. Clarke, one of the executors named in the last will and testament of Peleg Clarke, late of said Westerly, deceased, has constructively declined to accept said trust, and whereas Frances V. Briggs the other of said executors named in said will has in writing accepted said trust ; it is ordered and decreed by this court that letters testamentary on the estate of said Peleg Clarke be granted to said Frances V. Briggs."

Said Frances V. Briggs thereupon duly qualified as executor and gave the notice required for the presentation of claims against the estate, and has ever since continued to act as such executor.   As the executor of said will she successfully proved and supported the same in the Appellate Court, against the determined and vigorous opposition of said Phebe M. Clarke, and on the 30th day of July, 1900, a final decree was entered in said Appellate Court, as follows :

"WASHINGTON, SC.

"SUPREME COURT,
"COMMON PLEAS DIVISION,
"June Session, A. D. 1900.

"PHEBE M. CLARKE,
             *v.*                }  No. 335.
"COURT OF PROBATE OF WESTERLY. }

"FINAL DECREE.

"The above entitled cause came on for trial before Mr. Justice Blodgett and a jury, and after a trial of the same the jury returned a verdict that the instrument in writing, dated the 9th day of August, 1895, purporting to be the last will and testament of Peleg Clarke, is the last will and testament of Peleg Clarke; and also returned a special verdict that Frances V. Briggs, daughter of said Peleg Clarke, did not procure the execution of said will by undue influence.

"Whereupon it is ordered, adjudged, and decreed by said court that said instrument in writing, dated the 9th day of August, 1895, purporting to be the last will and testament of Peleg Clarke, is proved to be such, and is admitted to probate as and for the last will and testament of Peleg Clarke.

"And the clerk of this court is hereby instructed to transmit a copy of this order and decree to the Court of Probate of Westerly, in said county.

"Enter.

"J. T. BLODGETT, J. S. C.,
        "July 30, 1900.

"Entered as the decree of the Common Pleas Division of the Supreme Court this 30th day of July, A. D. 1900.

"By order,

"WM. H. CASWELL, *Clerk.*"

On August 31, 1900, after said will had been finally sustained in the Appellate Court, said Phebe M. Clarke filed a petition in said Probate Court asking that letters testamentary be granted to her, as coexecutor with said Frances V. Briggs, on

said estate.    On this petition the court, after various hearings and continuances, passed a decree December 7, 1900, revoking the former decree passed on February 19, 1900—which decree is hereinbefore recited—and, against the objection of appellants, entered a decree revoking the said decree whereby letters testamentary were granted to Frances V. Briggs on the 19th day of February, 1900, and granting letters testamentary on said estate to Phebe M. Clarke and Frances V. Briggs.

From this decree an appeal was taken to this court, which appeal is the case now before us.

The reasons of appeal are, in brief :    1. That said Court of Probate had no right to revoke the grant of letters testamentary to said Frances V. Briggs, made on the 19th day of February, 1900, because (a) no petition was ever presented to said court asking for the revocation of said letters testamentary ; and (b) because no legal notice was ever given to said Frances V. Briggs of the pendency of the petition to revoke said letters testamentary.

2.    That said Court of Probate had no authority to grant said letters testamentary to Phebe M. Clarke, because she had already been appointed executor by said court, and had been decreed to have constructively declined to accept said office, and that letters testamentary had been granted to Frances V. Briggs, from which decree no appeal was ever taken.    The prayer of the appellant therefore is that said decree made and passed on the 7th day of December, 1900, may be declared null and void.

As to the first of said reasons of appeal, we observe that it appears by the certificate of the clerk of said Probate Court that no petition asking for the removal of Frances V. Briggs as executor of said will, and for the revocation of the letters testamentary granted to her, was ever presented to said Probate Court.    It also appears from said certificate that no notice was ever given to her of the pendency of such a petition.    This being so, there was nothing before the court for it to act upon at this time, so far as she was concerned, and hence its action in the premises as to her was wholly void and of no effect.    And this is so, even though it appears from

the record before us that the parties in interest were represented by counsel at the time of the action referred to; for a Court of Probate can only act in a matter of this sort in the manner prescribed by statute, which includes the filing of a petition and the giving of notice thereon previous to the passage of any decree.    See Gen. Laws R. I. cap. 210, §§ 1 to 12.

(2)    The only matter which was before said court at this time was the petition of said Phebe M. Clarke, asking that she be appointed as one of the executors of said will, as aforesaid. And hence that was the only matter which it could act upon, even assuming that it had jurisdiction to act upon that, of which we will speak later on.    Phebe M. Clarke and Frances V. Briggs had already been appointed executors under said will; the latter had duly qualified as such executor and was proceeding in the discharge of her duties as such, while the former had renounced her appointment by taking an appeal from the probate of said will and contesting the same in the Appellate Court.    In view of her renunciation of said office the Probate Court very properly passed a decree setting forth said fact, and issued letters testamentary to said Frances V. Briggs only.

The contention of the appellee that, as Phebe M. Clarke had claimed an appeal from the decree of the Probate Court admitting said will to probate, and had filed her appeal bond previous to the action of said court regarding the renunciation above referred to, that court had no jurisdiction of the subject-matter of said will or of any of its provisions, and hence that its decree or order to the effect that said Phebe had constructively declined to accept said trust was wholly void, is untenable.    For, while it is true that after an appeal is taken the action is removed from the court below, and that court has no longer any power or control over the same, yet, as it was competent for the court to issue letters testamentary, notwithstanding the appeal, it was proper, in view of the action of said Phebe M. Clarke, for it to direct that they should be issued to said Frances V. Briggs only.    It was necessary that someone should represent, care for, and pro-

tect the estate of the deceased pending the appeal; and, as said Phebe had declined to accept the trust conferred upon her by the will, the only thing to do was to issue letters testamentary to the other executor.    And that this could properly be done pending said appeal, there can be no doubt; for, under section 18 of chapter 210 of the General Laws, the executor or administrator, having given bond according to law, has power, pending an appeal, to manage the estate to the same extent, with certain exceptions, as though no appeal had been taken.    Moreover, so far as appears of record, the Probate Court had no knowledge of the renunciation by said Phebe M. Clarke of the office conferred upon her until said appeal was claimed.

Again, *without* said action of the Probate Court, said Frances V. Briggs would clearly have been entitled to letters testamentary on said estate; for she had been duly and regularly appointed and was, therefore, entitled to such letters. See Gen. Laws R. I., cap. 212, § 14.

· That the taking of an appeal from the probate of said will amounted to a renunciation by said Phebe of her right to act as executor thereunder needs no argument.    Her conduct was only open to one construction.    Being one of the executors named by the testator in his will, it was her duty to support the same instead of seeking to overthrow it, as she did (*Hazard* v. *Engs*, 14 R. I. 5); and hence the Court of Probate could do nothing less than to regard her conduct as a constructive renunciation of the office, under the statute. The fact that her renunciation was not in writing is not material.    The statute does not require it to be in writing.    If it is constructively made, that is enough.    See *Thornton* v. *Winston*, 4 Leigh, 163; *Pollard, Ad.* v. *Mohler*, 55 Md. 289; *Ayres* v. *Weed*, 16 Conn. 291; *Solomon* v. *Wixon*, 27 Conn. 520.

We have already said that, in view of the facts in this case, the action of the Probate Court which was had on December 7, 1900, in so far as it applied to Frances V. Briggs, was wholly void.    We now come to inquire whether the action of said court as to said Phebe M. Clarke was not also void.    In

short, whether the decree passed on said day was of any force or validity whatsoever. We are of the opinion that it was not. The Court of Probate, by admitting said will to probate on the 8th day of January, 1900, and by appointing the persons therein named as executors to that office, and by subsequently issuing letters testamentary to said Frances V. Briggs, as aforesaid, had exhausted its authority in the premises, and hence had no power to take any further steps in the matter. The case had been to the Appellate Court, the will had been sustained and the papers returned for record in pursuance of a decree of the Appellate Court above recited, and hence, as already suggested, nothing remained to be done except for the clerk to properly record said decree.

The case of *Jewett* v. *Turner*, 172 Mass. 496, is clearly in point. It was there held that after letters of adminstration have been granted, while the decree which granted them stands, the power of the Probate Court is exhausted. In the case at bar the decree of the Probate Court granting letters testamentary on said will to Frances V. Briggs still stands, and hence the court had no jurisdiction to appoint others or to re-appoint the same, or, indeed, to consider the petition of Phebe M. Clarke filed on August 31, 1900, in any way whatsoever except simply to dismiss it. Nor did the fact that on January 19, 1900, after taking an appeal from the probate of said will, said Phebe filed a paper in the Probate Court giving notice that in case the will was sustained on her appeal from the probate thereof she should claim the right to act as executor give her any standing in said Probate Court on her petition, or confer jurisdiction upon the court to hear the same. She had renounced her right in manner aforesaid, letters testamentary had been issued to the other executor, the case had proceeded to a final decree against her determined opposition, and the Court of Probate had no further jurisdiction in the premises, so long at any rate as the said Frances V. Briggs remained the executor of said will. Section 14 of chapter 212, General Laws, provides as follows:

"If any testator shall appoint more than one executor of his will, and any of them die, be incapable of acting, or de-

cline the trust either directly or constructively, or, having accepted thereof, shall die, resign, or be removed, or become incapable of acting, those who shall undertake to execute the will, and the survivors and survivor of them, shall have the same power and authority as is given by such will to the whole of them, to every intent and purpose whatsoever, unless otherwise provided in said will."

*Perry* v. *DeWolf*, 2 R. I. 103, relied on by counsel for appellee in support of his contention that said Phebe is now entitled as of right to the office of executor, notwithstanding her renunciation as aforesaid, is not controlling in this case, even assuming that the Court of Probate had jurisdiction to appoint her. In that case the question was whether a renouncing executor could have letters testamentary after the death of the accepting executor and before the appointment of an administrator—that is, while the chain of executorship remained unbroken—and the court held that he could. This seems to be the common-law rule, the reason for which, as stated by Greene, C. J., " is the respect which it feels for the will of the testator, and the duty of carrying this will into effect."

In *Robertson* v. *McGeoch*, 11 Paige's Ch. 642, it was held that where there are several executors and one of them renounces, and letters testamentary are thereupon issued to the others, he may retract, as a matter of course, after the death of the others and may have letters testamentary granted to him. See also *Davis* v. *Inscoe*, 84 N. C. 401. In the case at bar there is no vacancy in the office of executor by death or otherwise.

It is true that the old English authorities relied on by counsel for appellee seem to go still further and lay down the general rule that " where there are several executors and one renounces and the other or others prove the will, the renunciation is not binding on him so long as one or more of his co-executors continue in office, but he who renounced may at any time afterwards come in and administer ; and if he survives the acting executor, or if the acting executor is removed, he may retract his renunciation and take the executorship at any time

before letters of administration, with the will annexed, are granted." This rule, however, was long ago changed by statute 20 and 21 Vict., cap. 77, § 79, which is to the effect that "where any person renounces the probate of a will of which he is appointed executor, or one of the executors, the rights of such person in respect to the executorship·shall wholly cease, and the representation of the testator and the administration of his effects shall, without any further renunciation, devolve and be committed in like manner as if such person had not been appointed executor." See 11 Am. & Eng. Ency. of Law, 2nd ed. 757–8 ; 1 Williams on Ex'rs. 333–4 ; 1 Woerner Admr. 2nd ed. *512–13.

In speaking of the Canadian statute, which is an exact transcript of the imperial act aforesaid, in *Allen* v. *Parke*, 17 U. C. C. P. 108, the court said : "The former rule that one of two or more executors renouncing was nevertheless entitled, on the death of the executor who had proved, . . . to retract his renunciation and to procure probate, is now by the new law entirely changed." The court then follows with this quotation from 1 Salk. 311 :

"'But in another matter the common lawyers and the civilians disagreed. The common lawyers held, that where there are several executors and one renounces before the ordinary, and the rest prove the will, by the common law he who renounced may at any time afterwards come in and administer, and, though he never act during the life of his companions, may come in and take on him the execution of the will after their death, and shall be preferred before any executors of his companions ; but the civilians held that by the civil law a renunciation is peremptory.'"

The court then added that "the object of the late legislation was to adopt the more reasonable rule of the civil lawyers and to make the renunciation peremptory."

The old English rule above referred to has been adopted to some extent in this country. See *Matter of Application of Maxwell*, 3 Greene's N. J. Rep. 611 ; but with rare if any exceptions only to the extent of holding that the renouncing executor may come in and claim his right to withdraw his

renunciation after the death, disability, or removal of the one who accepted and qualified. And, in fact, so far as we can ascertain this is as far as the English cases went as matter of practice. Thus in *Judson* v. *Gibbons*, 5 Wend. 224, cited by counsel for appellee, Savage, C. J., said:

"An executor named in the will, is not bound to take probate when his coexecutors do; he may come in at any time afterwards and take letters testamentary, and even should he renounce, which was not done here, though he cannot in that case take letters testamentary during the life of such as prove the will, yet should he survive them he is entitled to administration of the estate and to letters testamentary."

*In the Matter of Taggart*, 1 Ashm. Pa. 321, which was a case where one of the executors renounced and subsequently the one who qualified became insane, it was held that upon his being discharged the renouncing executor might recant and be appointed.

These cases, together with others which might be cited, are in harmony with *Perry* v. *De Wolf*, *supra*, and doubtless state the law correctly, except as modified by the statutes of the various States which to a very large extent govern in all matters of this sort. But said cases do not control the decision of the question before us, for, as already said, there was not, nor is there now, any vacancy here in the office of executor, and hence the Probate Court had no jurisdiction to pass the decree in question.

It may be further said that to permit a renouncing executor to come in at any time during the administration of an estate by another executor would necessarily produce much complication and confusion, and hence it should not be permitted in the absence of an absolute right on the part of such renouncing executor thus to come in. And we are clearly of the opinion that in this country, at any rate, he has no such right, and we doubt if, even under the English rule aforesaid, he ever had such a right. The executors named in a will ought to be required, within a reasonable time at any rate, to either accept or reject said office; and if some accept and others renounce, and letters testamentary are duly issued to those

who accept, and they commence the administration of the estate, it is not reasonable or business-like to afterwards allow those who have renounced to come in and take part in such administration. And much less in a case like the one before us, where the renouncing executor has endeavored to break the will under which she was named as executor, should she be allowed to now recant and assume the duties of said office. We cannot recognize her right to take two such wholly inconsistent and antagonistic positions. An executor named in a will should either take one position or another in a matter of this sort, and, after having been finally defeated in the one taken, he should not be permitted to turn around and take the opposite one.

That it was the legal right of said Phebe M. Clarke to contest this will, as she did, no one will deny. Nor will it be claimed that by such conduct she deprived herself of the right to take under said will the property bequeathed to her. But that she forfeited her right to act as coexecutor under said will, in view of the facts aforesaid, we are fully of the opinion. Another reason why she should not now be appointed as such coexecutor is that the record shows that she has a claim against the estate of her said husband which has been presented to the present executor and has been by her disallowed. So that it is evident that if she wishes to collect said claim she will be under the necessity of bringing suit against the executor; and under the decision of this court in *Perkins* v. *Perkins*, 11 R. I. 270, she could not sue herself. This condition of affairs would create other complications in addition to those already suggested, and, therefore, constitutes a strong reason against her appointment.

Finally, we think the reasons of appeal are well founded and should be sustained, and that the action of said Probate Court should be quashed.

*John W. Sweeney*, for appellant.
*Nathan B. Lewis*, for appellee.